■ GREENE STEEL & WIRE COMPANY, INCORPORATED, Respondent, v. F. W. HARTMANN & COMPANY, INC., et al., Appellants-Respondents, and INTERNATIONAL TERMINAL OPERATING CO., INC., Respondent-Appellant.— Appeal by defendants, as limited by their briefs and by the notice of appeal of defendant International Terminal Operating Co., Inc., from the respective portions of a judgment of the Supreme Court, Kings County, dated February 2, 1968, which are against them. The judgment is in favor of plaintiff against defendants for $55,358.17, with interest from March 1, 1960, and dismisses the cross claim of the other two defendants against said defendant, after a nonjury trial. Judgment modified, on the law and the facts, by (1) striking out so much thereof as is in favor of plaintiff against defendants F. W. Hartmann & Company, Inc., and International Terminal Operating Co., Inc., (2) adding a provision dismissing the complaint against said defendants, and (3) reducing the award in favor of plaintiff against defendant Euram Line to $47,089.55 with interest

from October 1, 1961 and reducing the total of the award against said defendant accordingly. As so modified, judgment affirmed insofar as appealed from, without costs. Plaintiff purchased 6,600 coils of wire from a steel mill in Germany. Arrangements were made by the traffic department of the seller with defendant Euram Line, a transoceanic transportation company, to ship the wire to Brooklyn, N. Y. The wire was received by Euram's agents at several ports in Germany and loaded aboard the S. S. Axeline Brodin, a vessel under charter to Euram. Euram's agent in the Port of New York was defendant F. W. Hartmann & Company, Inc. [Hartmann], whose duty it was to husband any of Euram's ships, including the S. S. Axeline Brodin which carried the coils. The coils were unloaded and stored on piers owned and operated by defendant International Terminal Operating Co., Inc [ITO], in Brooklyn. Plaintiff, in causes of action alleging breach of contract and negligence by Euram and Hartmann, claimed damages for their delivery of rusted coils of wire which had been shipped on clean bills of lading, and, in another cause of action, claimed that ITO was negligent in failing to properly protect the coils from the elements after they were placed on the piers, as a result of which the wire became further damaged. We find that Euram's acceptance of the cargo on clean bills of lading, i.e., without exception or notation as to defects, created a presumption in plaintiff's favor that the wire accepted for shipment was free of apparent defect (U. S. Code, tit. 46, § 1303); and that the record supports a finding that the coils when unloaded from the vessel in Brooklyn were rusted beyond any superficial oxidation for which responsibility was excluded by paragraph 19 of the printed conditions of the bills of lading. Consequently, we agree that plaintiff is entitled to recover its damages from Euram. However, in the computation of the damages plaintiff was twice given its loss of profits amounting to $8,268.62, which requires that that sum be deducted from the sum awarded for damages of $55,358.17, leaving the total damages at $47,089.55. Although not specified in the trial court's decision, the judgment provides for interest from March 1, 1960, the date on which the wire was unloaded at the pier. As part of its damages plaintiff was awarded the cost of redrawing the wire to make it marketable. That operation was not completed until about October 1, 1961. Because the contract breach consisted in the negligent stowage and handling of the cargo and the damages were unliquidated and unascertainable until the conclusion of the salvage operation, the date from which interest is to be computed was not certain. It was therefore not within the province of the clerk to fix the date (CPLR 5001, subd. [c]). Rather than remand the case to the trial court to fix the date, we conclude that in the instant circumstances the date the damages were liquidated, October 1, 1961, is the proper date to be fixed and we so direct. Therefore the judgment as against Euram should be modified by reducing the sum awarded to $47,089.55, with interest from October 1, 1961. As to Hartmann we find that all times it acted as a disclosed New York agent for Euram and as such was not a party to the contract binding plaintiff and Euram or liable for its breach (*Voss* v. *John Lowry, Inc.*, 225 App. Div. 507, 511). Hartmann's liability, if any, would result from its own negligence in the handling of plaintiff's goods. It could not be charged with the damage occasioned before delivery at the pier and no effort was made to establish the extent, if any, of the additional damage resulting from the unloading at the open pier in Brooklyn, assuming that that constituted negligent conduct on Hartmann's part to plaintiff's detriment. There was no proof of actual knowledge on Hartmann's part, although it may be inferred from the testimony of custom, of the condition of the bills of lading requiring unloading at or under a covered pier in Brooklyn or proof that Hartmann actually directed the moorage of the S. S. *Axeline Brodin* at ITO's open piers in Brooklyn. Arrangements for such moorage and

unloading of Euram's vessels had previously been made directly by Euram with ITO. Absent such knowledge and the deliberate avoidance of the requirement of the bill of lading, we consider the proof to be insufficient to sustain a finding of negligence on the part of Hartmann. Consequently, as against Hartmann the judgment should be reversed and the complaint dismissed. The trial court found that ITO contributed to the loss suffered by plaintiff in failing to use reasonable care in protecting the coils from the elements. ITO was not a party to the contract between plaintiff and Euram; nor was it a joint tort-feasor with Euram. It would be liable only for its own tortious conduct. If any damage was occasioned by its fault, that damage would be successive to the damage caused by Euram (*Derby* v. *Prewitt,* 12 N Y 2d 100). In the cause of action against ITO, which sounded in negligence, the burden of establishing negligence on the part of ITO and the extent of damage occasioned thereby was upon plaintiff. Plaintiff neither alleged nor proved its own freedom from contributory negligence, both essential to its claim. It failed to establish the extent of the damage on arrival and the extent to which such damage was aggravated by the successive tort. In these circumstances, as against ITO the judgment must be reversed and the complaint dismissed. The portion of judgment which dismissed the cross claim of defendants Hartmann and Euram Line against defendant ITO should be affirmed. Beldock, P. J., Christ, Benjamin, Munder and Martuscello, JJ., concur.